[Cite as *State v. Arnold*, 2026-Ohio-2907.]

STATE OF OHIO        )
                       )ss:
COUNTY OF SUMMIT    )

| | |
|---|---|
| STATE OF OHIO | IN THE COURT OF APPEALS<br>NINE JUDICIAL DISTRICT |

STATE OF OHIO

    Appellee

v.

MAURICE ARNOLD

    Appellant

C.A. No.     31733

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2023-09-2935

DECISION AND JOURNAL ENTRY

Dated: July 29, 2026

SUTTON, Judge.

**{¶1}** Defendant-Appellant Maurice Arnold appeals the judgment of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** This appeal arises from Mr. Arnold's convictions for drug and weapons-related charges. In 2022 and 2023, Mr. Arnold was on post-release control under the supervision of Ohio's Adult Parole Authority as part of his sentence for a prior felony conviction. John Christie was Mr. Arnold's assigned parole officer. Due to Mr. Arnold's behavior while on post-release control, including his testing positive for THC, an ingredient in marijuana, Officer Christie placed Mr. Arnold on GPS monitoring using an ankle monitor. Mr. Arnold had reported to his previous parole officer that he resided at an

address on Thurmont Road in Akron, Ohio, but the data from the ankle monitor showed that Mr. Arnold spent most of his nights at his girlfriend C.J.'s home on Noah Avenue in Akron. From March 30, 2023, through May 30, 2023, Mr. Arnold had spent his nighttime hours at the Noah Avenue address 51 out of 60 days, and the other nights were not spent at the Thurmont Road address. Mr. Arnold's time spent at the Thurmont Road address ranged from twenty minutes to three hours per visit. In addition, Mr. Arnold's bedroom at the Thurmont Road address did not have a bed or mattress in it. Mr. Arnold admitted to Officer Christie that he spent time at C.J.'s home on Noah Avenue. Officer Christie attempted to make several unannounced visits to Mr. Arnold at the Thurmont Road address and was unable to locate him there. When Officer Christie was able to meet with Mr. Arnold at Thurmont Road, Mr. Arnold would arrive by vehicle and park outside the residence. Mr. Arnold had met with Officer Christie at the Noah Avenue residence, had a key to the Noah Avenue residence, and he was receiving mail there. Based on this information, Officer Christie changed Mr. Arnold's address to the Noah Avenue address for post-release control supervision purposes and advised C.J. that the Noah Avenue address was Mr. Arnold's "parole address."

{¶3} As part of his duties as Mr. Arnold's parole officer, Officer Christie monitored Mr. Arnold's social media accounts such as Facebook and Instagram, and he observed a photograph posted on Mr. Arnold's Facebook account of Mr. Arnold standing next to a table or stand with a firearm on it. Because Mr. Arnold was prohibited from possessing a firearm, Officer Christie notified the Akron Police Department. Police then obtained a search warrant for Mr. Arnold's social media accounts. Officer Christie saw

additional posts on Mr. Arnold's social media that showed Mr. Arnold offering to sell marijuana (Facebook) and displaying a firearm with an extended magazine and a machine gun conversion device (Instagram). As a result of Officer Christie's observations, a warrant was issued for Mr. Arnold's arrest for violating the terms of his post-release control.

{¶4} Police surveilled the Noah Avenue property, and on August 16, 2023, observed Mr. Arnold exit the Noah Avenue residence and drive away in his vehicle. Police initiated a traffic stop and arrested Mr. Arnold on the parole violation warrant without incident. Police searched the vehicle and found several cell phones, a digital scale, and plastic baggies.

{¶5} After Mr. Arnold's arrest, C.J. consented to parole officers entering the Noah Avenue residence to conduct a parole search. During the search, Officer Christie observed a computer stand he recognized from one of Mr. Arnold's social media posts. Officer Christie also found mail addressed to Mr. Arnold at the Noah Avenue address and male clothing belonging to Mr. Arnold in the living room and in an upstairs bedroom. Officer Christie found a Glock pistol with an extended magazine and a machine gun conversion device and identified it by the serial number as the same pistol he had seen on Mr. Arnold's Instagram account.

{¶6} When officers asked C.J. for her consent to conduct a full search, she did not consent. Police then obtained a search warrant for the Noah Avenue premises based on the initial parole search of the property, and during the search pursuant to that warrant, found and seized numerous items, including firearms, ammunition, a bag of marijuana, a digital

scale, plastic baggies, and additional mail addressed to Mr. Arnold at the Noah Avenue address, including mail from the Ohio Bureau of Motor Vehicles.

{¶7} The Summit County Grand Jury indicted Mr. Arnold for: (1) trafficking in heroin in violation of R.C. 2925.03(A)(2) and (C)(6)(e), a felony of the first degree; (2) possession of heroin in violation of R.C. 2925.11(A) and (C)(6)(d), a felony of the second degree; (3) having weapons while under disability in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree, together with two weapon forfeiture specifications pursuant to R.C. 2941.1417(A); (4) unlawful possession of a dangerous ordnance in violation of R.C. 2923.17(A) and (D), a felony of the fifth degree, together with a six-year firearm specification pursuant to R.C. 2941.144(A); (5) trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(c), a felony of the third degree; and (6) possession of marijuana in violation of R.C. 2925.11(A) and (C)(3)(c), a felony of the fifth degree.

{¶8} Mr. Arnold filed a motion to suppress, seeking to suppress "any and all evidence that the [State] intend[ed] to use at trial, on the ground that such evidence is fruit of an unconstitutional search and seizure in violation of the rights guaranteed . . . by the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution." The motion to suppress challenged the parole warrant as defective, arguing it was based on uncorroborated hearsay and did not establish a violation of Mr. Arnold's post-release control. A hearing was held on the motion to suppress, and the trial court denied the motion, determining "[a]t the time [O]fficer Christie requested and obtained the [search] warrant, he had reasonable ground

to believe [Mr. Arnold] was not abiding by the law and not complying with the terms and conditions of post release control." Therefore, the trial court found the search was "lawful and constitutionally permissible." The trial court also stated at the hearing, "there is credible evidence that [Officer] Christie had at the time that [Mr. Arnold's] address was in fact, Noah Avenue. He was receiving mail there, and throughout the course of the prior almost 30 days he had only spent 45 minutes at his other address."

{¶9} The State dismissed counts one and two of the indictment, trafficking and possession of heroin. The matter proceeded to a jury trial on the remaining counts. The jury found Mr. Arnold guilty on the remaining counts and specifications. The trial court sentenced Mr. Arnold to an aggregate 10 to 12 years in prison, which included a six-year mandatory term for the automatic weapons specification.

{¶10} Mr. Arnold has appealed, raising four assignments of error for our review. To facilitate our analysis, we will consider some assignments of error out of order.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT IMPROPERLY DENIED [MR. ARNOLD'S] MOTION TO SUPPRESS.**

{¶11} The grounds set forth in the motion to suppress included: the "State Warrant" issued by the Adult Parole Authority was defective; the warrant was based on "uncorroborated hearsay obtained from unknown declarants of unknown reliability[;]" the warrant did not state a violation of the terms and conditions of Mr. Arnold's post-release control; and the warrant did not establish the commission of any criminal offense. Mr.

Arnold argued in the motion to suppress that the search of Mr. Arnold's person and vehicle incident to his arrest therefore "must be suppressed." At the suppression hearing, Mr. Arnold's trial counsel argued, "this warrant was insufficient to provide a basis for the stop." The motion to suppress and suppression hearing concerned only the arrest warrant issued by the Adult Parole Authority, not the search of the Noah Avenue residence.

{¶12} Mr. Arnold admits in his arguments set forth under his fourth assignment of error that the search of the Noah Avenue residence was not challenged in the motion to suppress. Nevertheless, Mr. Arnold argues in his first assignment of error that the trial court erred when it denied his motion to suppress because there was conflicting evidence concerning whether Mr. Arnold resided at the Noah Avenue address and the trial court failed to set forth findings of fact that Mr. Arnold did reside there. Mr. Arnold further argues that "any consent that [Mr. Arnold] gave as a result of being on [post-release control] does not extend to the Noah property."

{¶13} "[A] defendant's failure to raise an issue at trial forfeits all but plain error on review." *State v. Drain*, 2022-Ohio-3697, ¶ 51. Mr. Arnold, however, has not argued plain error on appeal. When a party fails to set forth a plain error argument in his merit brief, this Court will not create a plain error argument on his behalf. *See State v. Hairston*, 2006-Ohio-4925, ¶ 11 (9th Dist.).

{¶14} Mr. Arnold did not challenge the search of the Noah Avenue residence in his motion to suppress and has not developed a plain error argument concerning this issue on appeal. Accordingly, Mr. Arnold's first assignment of error is overruled, and we will

discuss the failure to challenge the search of the Noah Avenue residence in our analysis of Mr. Arnold's fourth assignment of error.

## ASSIGNMENT OF ERROR III

**[MR. ARNOLD'S] CONVICTIONS ARE SUPPORTED BY INSUFFICIENT EVIDENCE.**

{¶15}  Mr. Arnold argues in his third assignment of error that there was insufficient evidence to support his convictions.  Mr. Arnold specifically argues there was insufficient evidence to support his conviction for unlawful possession of a dangerous ordnance, in violation of R.C. 2923.17(A), arguing that the State presented no evidence that he intended to convert the firearm into a dangerous ordnance.  Mr. Arnold also argues the State failed to present sufficient evidence that he possessed an automatic firearm, in violation of R.C. 2941.144(A), the automatic weapons specification.

{¶16}  R.C. 2923.17(A) provides: "No person shall knowingly acquire, have, carry, or use any dangerous ordnance."  R.C. 2923.11(K) defines a "dangerous ordnance" as including any automatic firearm and any combination of parts that is intended by the owner for use in converting any firearm into a dangerous ordnance.  R.C. 2901.22(B) provides: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious

purpose to avoid learning the fact." R.C. 2923.144(A) provides for a mandatory six-year prison term if the offender had an automatic firearm on his person or under the offender's control.

{¶17} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *See State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶18} Mr. Arnold does not argue here that there was insufficient evidence that the Glock fitted with the conversion device was a dangerous ordnance or automatic weapon. Indeed, a handgun with a switch that renders it able to fire automatically is a dangerous ordnance. *State v. Hoskins*, 2026-Ohio-100, ¶ 31 (1st Dist.). Rather, Mr. Arnold focuses on whether the State presented evidence that he *possessed* an automatic weapon and whether he intended to convert the firearm into an automatic weapon.

{¶19} "'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his

immediate physical possession.'" *State v. Jackson*, 2018-Ohio-1285, ¶ 38 (9th Dist.), quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. "Ownership does not need to be proven, and constructive possession may be established by circumstantial evidence." *State v. Cross*, 2019-Ohio-3133, ¶ 7 (9th Dist.).

{¶20} The State presented evidence that Mr. Arnold knowingly acquired or had the automatic weapon. R.C. 2923.17(A). Mr. Arnold had previously posted a video to his Instagram account of the same converted Glock with the conversion device attached that was found during the search of the Noah Avenue residence. During the search, parole paperwork issued by Officer Christie to Mr. Arnold was found immediately next to the converted Glock. Mr. Arnold had also previously posted a photograph to his social media of a firearm atop a table or stand that was in the Noah Avenue residence. While Mr. Arnold was not physically present in the home when the converted Glock was found, the State presented evidence that Mr. Arnold was frequently in the Noah Avenue home and had been in the home immediately prior to his arrest on August 16, 2023. C.J. denied that the converted Glock was hers and denied knowing it was in her home. The record contains credible evidence establishing that Mr. Arnold was aware of the converted Glock's presence in the Noah Avenue residence and he had the ability to exercise dominion or control over the weapon. *See State v. Williams*, 2025-Ohio-2593, ¶ 36 (8th Dist.) (constructive possession over weapon found in a home established by the defendant's presence in the home on multiple occasions, the presence of his personal items in the home, including mail, and photographs of the defendant in the home with firearms posted on social media).

{¶21} Viewing the evidence in the light most favorable to the State, there was sufficient evidence that Mr. Arnold knowingly had or acquired a dangerous ordnance. Accordingly, Mr. Arnold's third assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**[MR. ARNOLD'S] CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶22} Mr. Arnold argues in his second assignment of error that his convictions are against the manifest weight of the evidence. Mr. Arnold continues to argue that he lived at the Thurmont Road address, not at the Noah Avenue address, and argues he could not possess something found in the home in which he did not reside.

{¶23} "In determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶24} An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are

mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶25} C.J. testified that she resided at the Noah Avenue residence and denied that Mr. Arnold resided there but admitted he would spend nights there. C.J. testified that she owned an antique revolver and a Glock 43X but denied knowing about a second Glock firearm, the one that was equipped with the machine gun conversion device. C.J. admitted Mr. Arnold would occasionally wash clothing at her house and he kept some clothing in her bedroom. She stated she was unaware that Mr. Arnold received mail at her home although mail addressed to Mr. Arnold was found throughout her home.

{¶26} The State presented evidence that Mr. Arnold spent a considerable amount of time at the Noah Avenue residence and even received mail there. A picture of the converted Glock was posted to Mr. Arnold's social media. The converted Glock was found in the Noah Avenue residence immediately after Mr. Arnold left the residence.

{¶27} We have reviewed the record in this matter, including the testimony of the witnesses as well as the exhibits, and determine the jury's conclusion that Mr. Arnold possessed the converted Glock firearm is not against the manifest weight of the evidence.

{¶28} Mr. Arnold also argues there was conflicting testimony concerning whether the converted Glock firearm worked. Detective James Soroky of the Akron Police Department attempted to test-fire the converted Glock. Detective Soroky testified that the conversion device was not manufactured by Glock, so he had concerns about whether it

would operate as it was supposed to and it could be dangerous. When the gun did not fire despite Detective Soroky moving the switch to different positions, he became concerned about his safety, stating, "And at that point, I'm like, I'm not going to blow off my hand trying to figure this out. So I just said, it didn't work. Send it to BCI."

{¶29} Detective Soroky admitted that he was just trained in the basics, and the Ohio Bureau of Criminal Investigation ("BCI") does "way more than the [Akron Police] can." He further testified that BCI has remote firing stands and people more qualified than he was to take a look at it. Detective Soroky said he was aware that BCI was able to get the converted Glock firearm to work and they "shot a lot of rounds." When BCI sent the converted Glock back to Detective Soroky, he retested it and found it to work, because "well, now [he knew he was not] going to blow [himself] apart with it[.]" Detective Soroky testified that the non-Glock converter on the firearm may not work as consistently as a Glock converter, and this opinion was borne out by his and BCI's testing of the converted firearm. When asked on cross-examination if the firearm he tested was "either a fully automatic handgun, dangerous ordnance, or you have a piece of junk that doesn't work[,]" Detective Soroky answered, "Or you have a weapon that is intermittently operable."

{¶30} Joshua Barr, forensic scientist in the firearm section of BCI testified he fired the converted Glock and found it to be "functioning full automatic[,]" which means when the trigger is held back, the gun would continue to fire until the magazine was empty. Mr. Barr testified that he did not do anything special to the gun to make it work and fired it in the condition he received it.

{¶31} Mr. Arnold argues that the testimony of Detective Soroky and Mr. Barr conflicted concerning the operability of the converted Glock. We disagree. The testimony established that the converted Glock was operable, if not 100% of the time. That an automatic firearm occasionally malfunctions, or a particular user is unable to fire the weapon, does not negate that the weapon is a dangerous ordnance.

{¶32} For these reasons, this is not the exceptional case where the trier of fact clearly lost its way creating a manifest miscarriage of justice requiring the conviction to be reversed and a new trial ordered. *Otten* at 340.

{¶33} Accordingly, Mr. Arnold's second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**[MR. ARNOLD] RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

{¶34} In his fourth assignment of error, Mr. Arnold argues he received the ineffective assistance of counsel. Mr. Arnold argues his trial counsel was ineffective for failing to raise res judicata because Mr. Arnold's address was purportedly determined not to be at the Noah Avenue residence at an Adult Parole Authority hearing, for failing to challenge the search of the Noah Avenue premises, and for failing to raise judicial estoppel.

{¶35} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, Mr. Arnold must establish: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable

representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving there exists a reasonable probability that, were it not for counsel's errors, the result of the proceedings would have been different. *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 2008-Ohio-3108, ¶ 34 (9th Dist.).

{¶36} Mr. Arnold argues trial counsel was ineffective for not challenging the search of the Noah Avenue residence. Trial counsel explained in detail his decision not to file a motion to suppress the search of the Noah Avenue residence in a discussion with the trial court prior to jury selection. Counsel's reasons were that because Mr. Arnold was on post-release control, if he did reside at the Noah Avenue premises, the premises was subject to search, and if it was not his residence, Mr. Arnold had no standing to challenge the search.

{¶37} On appeal, Mr. Arnold has not developed an argument that a challenge to the search of the Noah Avenue residence would have been successful had it been raised in the motion to suppress. The State presented evidence at the suppression hearing that according to GPS data from Mr. Arnold's ankle monitor, Mr. Arnold had spent only 45 minutes in a thirty-day period at the Thurmont Road address, and that he received mail at the Noah Avenue address. Evidence was also presented that C.J. let him spend the night at the Noah Avenue address and he had a key to the residence. The trial court found in ruling on the motion to suppress that Mr. Arnold's address at the time of the search was, "in fact, Noah Avenue. He was receiving mail there, and throughout the course of the prior almost 30 days he had only spent 45 minutes at his other address." Officer Christie testified that it was not unusual for a person on post-release control to provide an address at which they

do not live and the Adult Parole Authority makes the ultimate determination of where a person is residing for purposes of post-release control. Therefore, the trial court did not err in finding that Mr. Arnold resided at the Noah Avenue address and trial counsel was not ineffective for not moving to suppress the search of the Noah Avenue premises.

{¶38} In addition, even if Mr. Arnold did not reside at the Noah Avenue residence, because he was on post-release control, and because he had his C.J.'s permission to be at the Noah Avenue residence, that premises was subject to a search as well pursuant to R.C. 2967.131(C), which provides in relevant part:

> (C)(1) [D]uring a period of post-release control of a felon imposed under section 2967.28 of the Revised Code, authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest *or for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess*, if any of the following apply:
>
> (a) The field officers have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's conditional pardon, parole, transitional control, other form of authorized release, or post-release control.

(Emphasis added.)

{¶39} R.C. 2967.131(C) therefore allows the Adult Parole Authority to conduct a search of Mr. Arnold's residence or other real property for which he has "the express or implied permission" of the legal occupant "to use, occupy or possess," if the field officers have reasonable grounds to believe he is not abiding by the law, or otherwise not complying

with the terms and conditions of his post-release control. The search of the Noah Avenue premises was conducted by the Adult Parole Authority and Mr. Arnold had C.J.'s permission to be there. C.J. allowed him to spend nights there and do his laundry there. He kept some of his clothing in an upstairs bedroom. Mr. Arnold had just left the Noah Avenue residence when he was stopped by police executing the parole warrant. Therefore, the search was proper pursuant to R.C. 2967.131(C)(1). *State v. Robinson*, 2025-Ohio-2216, ¶ 20 (9th Dist.) ("R.C. 2967.131(C)(1) . . . does not state the [person on post-release control] must be in the searched premises at the time of the search.")

{¶40} Finally, C.J. consented to the initial warrantless search of the Noah Avenue residence. While "[s]earches conducted without a warrant are presumptively unreasonable, unless an exception to the warrant requirement applies[,]" *State v. Jones*, 2013-Ohio-2375, ¶ 8 (9th Dist.), citing *Payton v. New York*, 445 U.S. 573, 586 (1980), consent is a well-established exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).

{¶41} Mr. Arnold also argues trial counsel was ineffective for not asserting the doctrines of res judicata and judicial estoppel to preclude the State from asserting that Mr. Arnold resided at the Noah Avenue address. However, as set forth above, whether Mr. Arnold resided at the Noah Avenue address at the time of the search is irrelevant because Mr. Arnold was on post-release control. He either resided at Noah Avenue, or stayed there with the permission of C.J. Either way, the parole search was permissible pursuant to R.C. 2967.131(C)(1). In addition, C.J. consented to the search and consent is an exception to

the warrant requirement. Therefore, trial counsel cannot be ineffective for not challenging the search of the Noah Avenue residence because those challenges would have failed.

{¶42} Mr. Arnold has not shown that trial counsel's decision not to file a motion to suppress the search of the Noah Avenue premises fell below an objective standard of reasonable representation, nor has he shown he was prejudiced thereby.

{¶43} Accordingly, Mr. Arnold's fourth assignment of error is overruled.

### III.

{¶44} For the forgoing reasons, Mr. Arnold's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
FLAGG LANZINGER, P. J.
CONCUR.

APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and AMANDA A. FILIPPI, Assistant Prosecuting Attorney, for Appellee.